UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

ROBERT S. BROOKS, JR.,

    Plaintiff,

v.  Civ. No.12-1249 MV/SMV

BOARD OF EDUCATION, FARMINGTON
MUNICIPAL SCHOOLS, and JANEL RYAN,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion for Partial Summary Judgment [Doc. 66] and Defendants' Motion for Summary Judgment and For Qualified Immunity [Doc. 69]. The Court, having considered the motions, briefs, relevant law and being otherwise fully informed, finds that Plaintiff's Motion will be denied and Defendants' Motion will be granted.

## BACKGROUND

Plaintiff Robert S. Brooks, Jr., was employed by Farmington Municipal Schools ("FMS") from November 1995 until June 2012, through a series of one-year contracts. Plaintiff's most recent contract was for the period from July 1, 2011 through June 29, 2012. Doc. 67-1. The contract states at the top: "Noncertified/Classified Contract; School Year 2011-12; Three or more consecutive years of service." The contract identifies Plaintiff as a "noncertified employee," and his job as "data processing," a "classified position" with FMS. The contract provides that it is subject to the applicable laws of the State of New Mexico. The contract states that it "may be cancelled by the Superintendent [of FMS] for just cause, provided, that any such cancellation may be effected only in accordance with New Mexico laws."

On June 15, 2011, FMS wrote a memorandum to Plaintiff memorializing a conversation "regarding expectations for the 2011-2012 school year." Doc. 70-5. Specifically, the memorandum states that FMS had offered Plaintiff "one more year of employment at [his] current salary," and that, if he chooses to stay with FMS after the 2011-2012 school year, he would "need to reapply for positions in which [he is] qualified." Thereafter, on April 16, 2012, Janel Ryan, Superintendent of FMS, wrote a memorandum to Plaintiff stating that his position was being eliminated, and that he would not be rehired for the 2012-2013 school year. Doc. 67-10.

On July 17, 2012, Plaintiff's attorney sent Ms. Ryan a letter, stating that FMS had terminated Plaintiff without just cause and demanding reinstatement of Plaintiff's employment or, in the alternative, requesting that he be afforded certain process, including the provision of a statement of reasons for his termination and a hearing before the local Board. Doc. 67-11. In a letter dated August 10, 2012, attorneys for FMS denied Plaintiff's requests, arguing that FMS was free to elect not to reemploy Plaintiff for the next school year without cause and without any affording him any sort of process. Doc. 67-8. On August 15, 2012, Plaintiff submitted a written appeal. On August 20, 2012, attorneys for FMS advised that FMS would provide the reasons for his termination. Doc. 67-12. On August 23, 2012, however, attorneys for FMS sent another letter denying Plaintiff's requests for a statement of reasons for his termination and/or a hearing before the local Board. Doc. 67-13.

On December 3, 2012, Plaintiff filed his Complaint for Civil Rights Violations, Breach of Contract, and Breach of the Covenant of Good Faith and Fair Dealing. Doc. 1. The Complaint alleges that FMS and Ryan violated Plaintiff's procedural due process rights (Count I), breached Plaintiff's contract by failing to follow certain pre-termination procedures (Count II) and by terminating him without just cause (Count III), and breached the covenant of good faith and fair

dealing (Count IV).  On August 8, 2013, Plaintiff filed a motion for summary judgment in his favor on Counts I through III of the Complaint.  Doc. 66.  On August 9, 2013, Defendants filed a motion for summary judgment, seeking dismissal of all counts of the Complaint.  Doc. 69.  Both motions are opposed in their entirety.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.* at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993) (citations omitted).  The moving party need not negate the nonmovant's claim, but rather must show "that there is an absence of evidence to support the nonmoving party's case."  *Celotex v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party meets its initial burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."  *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citation omitted).  The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment, *see Pueblo v. Neighborhood Health Ctrs., Inc.*, 847 F.2d 642, 649 (10th Cir. 1988), but rather must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and

admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citation omitted).

Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co.*, 985 F. Supp. 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law. *See, e.g.*, *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex*, 477 U.S. at 322.

## DISCUSSION

In his motion, Plaintiff argues that, pursuant to both his contract and the FMS Board Policy in effect during the relevant time period, he had a reasonable expectation of continued employment. According to Plaintiff, by electing not to re-employ Plaintiff for the 2012-2013 school year without just cause and without following the pre-termination procedures set forth in the FMS Board Policy, Defendants, as a matter of law, deprived him of a property interest without affording him due process and breached the terms of his contract. On the other hand, Defendants argue in their motion that under the controlling statute, as a noncertified school employee employed to perform primarily district wide management functions, Plaintiff had no procedural protection for the nonrenewal of his contract. According to Defendants, because Plaintiff had no legitimate expectancy of reemployment, Defendants' election not to reemploy him, as a matter of law, did not violate Plaintiff's due process rights or breach the terms of his contract.

Both parties frame the issue as whether Defendants were entitled to terminate Plaintiff without cause and without process. The Court, however, finds that Defendants did not "terminate" Plaintiff within meaning of the applicable statute and, accordingly, need not reach the

issue presented by the parties.  As discussed herein, because Plaintiff was not terminated in the first instance, any rights that he might have had attendant to being terminated were never triggered, and thus cannot establish a basis for his claims of due process violations and breach of contract.

The School Personnel Act ("SPA"), codified at NMSA 1978, § 22-10A-1 through § 22-10A-39, sets forth the applicable procedures for the hiring, compensation and termination of public school employees.  The SPA defines the terms "discharge" and "terminate," and in so defining the terms, distinguishes between "certified school employees" and "noncertified school employees."  NMSA 1978, § 22-10A-2.  Specifically, in the case of a certified school employee, the SPA provides that "discharge" means "the act of severing the employment relationship with a certified school employee prior to the expiration of the current employment contract," and "terminate" means "the act of not reemploying an employee for the ensuing school year."  *Id.*  In the case of a noncertified school employee, the SPA provides no definition for the term "discharge," and defines the word "terminate" as "the act of severing the employment relationship with the employee."  *Id.*  Accordingly, the termination of a noncertified school employee, like Plaintiff, is similar to the discharge of a certified school employee, and requires the act of severing the employment relationship.  In setting forth different definitions based on whether a school employee is certified or noncertified, the Legislature took pains to make clear that, while the act of not reemploying an employee for the ensuing school year constitutes a termination in the case of a *certified* school employee, the same act does not constitute a termination in the case of a *noncertified* school employee.

During the relevant period, FMS had in place a Board Policy that included its employment policies.  Doc. 67-6.  In Section 4.2.5, the Board Policy discusses the procedures for dismissal of school employees, and makes clear that "[t]he dismissal of school employees and administrators

5

shall conform to the [SPA]." Board Policy § 4.2.5. That Section goes on to define "discharge" as "the act of severing the employment relationship with an employee prior to the expiration of the current employment contract, and "terminate" as "the act of not re-employing an employee for the ensuing school year." *Id.* Read alone, the Board Policy thus does not distinguish between certified and noncertified school employees for purposes of determining when a termination has occurred.

The Board Policy, however, cannot be read to provide greater rights than those provided by statute. *Naranjo v. Board of Educ. of Espanola Pub. Schs.*, 891 P.2d 542, 545 (N.M. 1995); *Swinney v. Deming Board of Educ.*, 873 P.2d 238, 240 (N.M. 1994) ("Any attempt by [a local school board] to enter into a contract or promulgate a termination policy giving an employee rights in conflict with the School Personnel Act would be ultra vires and void."). Indeed, the Board Policy itself recognizes that the dismissal of school employees must be undertaken in conformance with the SPA. Accordingly, the Court must read the Board Policy in conjunction with the SPA and interpret the Board Policy's definitions of discharge and termination as consistent with those set forth in the SPA. *See id.*

While it makes no mention of the termination policies applicable to Plaintiff, Plaintiff's contract for 2011 to 2012 states that it may be "cancelled" by the Superintendent for just cause, in keeping with relevant New Mexico law. Although the term "cancel" is not defined, the ordinary meaning of the word suggests the act of severing the employment relationship created by the contract. Thus, "cancel" appears to be the functional equivalent of "terminate," as the SPA defines that term in the context of a noncertified school employee.

Here, although Defendants elected not to reemploy Plaintiff for the 2012-2013 school year, they nonetheless allowed him to complete the term of his 2011-2012 school year contract.

Accordingly, Defendants did not sever Plaintiff's employment relationship.  Under these circumstances, Plaintiff, a noncertified school employee, was not terminated within the meaning of the SPA or the Board Policy, and his contract was not cancelled within the meaning of that contract.   It follows that, even if the SPA, Board Policy, or his contract entitled Plaintiff to procedural protections in the event of his termination or contract cancelation, his right to such protections was never triggered by Defendants' actions.   Because any right to procedural protections was never triggered, Defendants' failure to afford such protections does not constitute either a violation of due process or a breach of contract.   As a matter of law, Plaintiff thus cannot prove any of his claims.

## CONCLUSION

Based on the undisputed facts, Plaintiff was not terminated.   Because Plaintiff was not terminated, any rights that he might have had attendant to being terminated were never triggered, and thus cannot establish a basis for his claims of due process violations and breach of contract.  Accordingly, Plaintiff's claims must be dismissed.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Partial Summary Judgment [Doc. 66] is denied and Defendants' Motion for Summary Judgment and For Qualified Immunity [Doc. 69] is granted.

DATED this 28th day of March, 2014.

_____
MARTHA VAZQUEZ
United States District Judge