# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

ROBERT S. BROOKS, JR.,

      Plaintiff,

v.                                      Civ. No.12-1249 MV/SMV

BOARD OF EDUCATION, FARMINGTON
MUNICIPAL SCHOOLS, and JANEL RYAN,

      Defendants.

---

*Appearances:*
*For the Plaintiff:*
J. EDWARD HOLLINGTON
DIANE P. DONAGHY
708 Marquette Ave, NW
Albuquerque, NM  87102

*For the Defendants:*
ELIZABETH GERMAN
JASON M. BURNETTE
12836 Lomas Blvd NE
Suite G
Albuquerque, NM 87112

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Plaintiff Robert S. Brooks's pending Motion for Partial Summary Judgment and Memorandum in Support thereof (Pl. MSJ) [Doc. 66–67]. Defendants Board of Education, Farmington Municipal Schools (FMS) and Superintendent Janel Ryan (collectively "Defendants") opposed Mr. Brooks's Motion for Summary Judgment [Doc. 82] and moved for summary judgment themselves (Def. MSJ) [Doc. 69–70].   Mr. Brooks opposed Defendants' Motion [Doc. 78] and replied in support of his own Motion [Doc. 92]. Defendants then replied in support of their Motion [Doc. 93].   On March 3, 2014, this Court

entered an order denying Mr. Brooks's motion and granting Defendants motion on the basis that Mr. Brooks could not be said to have been terminated under the plain language of the New Mexico School Personnel Act (SPA) and because Ms. Ryan benefitted from qualified immunity [Doc. 123]. Mr. Brooks appealed, and the Tenth Circuit reversed this Court's interpretation of the New Mexico School Personnel Act but affirmed this Court's finding of qualified immunity for Ms. Ryan and remanded the case for further proceedings. *Brooks v. Bd. of Educ.*, 617 F. App'x 887 (10th Cir. 2015).

The Court, having considered the motions, briefs, relevant law in light of the Tenth Circuit's decision, and being otherwise fully informed, finds that Mr. Brooks's Motion will be GRANTED IN PART and DENIED IN PART, and Defendants' Motion will be GRANTED IN PART and DENIED IN PART. As explained below, the central issue in this case is whether Mr. Brooks performed "primarily district-wide management functions" at FMS. Neither party can establish the existence or non-existence of this fact with undisputed evidence. Summary judgment regarding this element of Mr. Brooks's claim is therefore DENIED for both parties.

BACKGROUND[1]

I. <u>Mr. Brooks's Employment and Termination at Farmington Municipal Schools</u>

This case is about whether a municipality applied adequate procedures when terminating an employee. Plaintiff Robert S. Brooks, Jr., was employed by Farmington Municipal Schools (FMS) from November 1995 until June 2012 through a series of near-identical one-year contracts. Doc. 67, Pl. Memo ISO MSJ, at 4 ¶ 2; Doc. 82, Opp. to Pl. MSJ, at 5 ¶ 2; Doc. 67–2,

---

[1] Unless the Court indicates otherwise, to the extent any of these facts are disputed, the Court concludes they are not material to the disposition of the Cross Motions. Further, to the extent the Court relies on evidence to which the parties have objected, the Court has considered and overruled those objections. As to any remaining objections, the Court finds it unnecessary to rule on them because the Court did not rely on the disputed evidence.

Additional Contracts.  Mr. Brooks's most recent contract was for the period from July 1, 2011 through June 29, 2012.  Doc. 67–1, 2011 Contract.  The contract states that it is a: "Noncertified/Classified Contract; School Year 2011-12; Three or more consecutive years of service" and identifies Mr. Brooks as a "noncertified employee" employed to perform "data processing," a "classified position" with FMS.  *Id.*  The contract provides that it is subject to the applicable laws of the State of New Mexico and that it "may be cancelled by the Superintendent for just cause[.]"  *Id.*  The sole parties to these contracts were FMS and Mr. Brooks.  Doc. 78, Brooks Opp. to FMS MSJ, at 24–31; Doc. 67-1, 2011 Contract.

Over the course of Mr. Brooks's employment with FMS, Mr. Brooks developed a reputation for not "working well with others" and attended mediations related to these issues. Doc. 70, Def. Memo ISO MSJ, at 2, 4.  Furthermore, by early 2011, FMS came to have serious doubts regarding Mr. Brooks's ability to effectively implement and manage FMS's financial and student record system.  Doc. 82, Def. Opp. to Pl. MSJ, at 2.  In particular, "by the beginning of 2011, it was clear that [Mr. Brooks] was not properly implementing [the IFAS program, a district-wide software system], and his repeated contacts to SunGuard, the software company responsible for IFAS, was costing [FMS] unnecessary amounts of money."  Doc. 70, Def. Memo ISO MSJ, at 2.

On June 15, 2011, FMS wrote a memorandum to Mr. Brooks memorializing a conversation "regarding expectations for the 2011-2012 school year."  Doc. 70-5, June 15, 2011 Memorandum from Linda Schliz and Randy Bondow to Bob Brooks.  Specifically, the memorandum states that FMS was in "the last stages of the IFAS conversion" and offered Mr. Brooks "one more year of employment at [his] current salary," but stated that Mr. Brooks's "[d]uties and expectations . . . will change from what [he has] done in the past."  *Id.*  If Mr.

Brooks chose to stay with FMS after the 2011-2012 school year, he would "need to reapply for positions in which [he is] qualified." *Id.* Approximately one year later, on April 16, 2012, Janel Ryan, Mr. Brooks's supervisor, wrote a memorandum to Mr. Brooks stating that his position was being eliminated and that he would not be rehired for the 2012–2013 school year. Doc. 67-10, April 16, 2012 Termination Memo from Janel Ryan to Bob Brooks. Mr. Brooks was not given a formal basis for his termination or an opportunity to challenge that basis before the school board. Doc. 67, Pl. Memo ISO MSJ, at 9–13. Relying on the language of the SPA regarding a "certified administrator" exception to SPA termination procedure, Ms. Ryan stated in the termination memorandum that Mr. Brooks was being terminated without explanation of cause because "[a]dministrators may be terminated for any reason deemed sufficient by the superintendent." Doc. 67-10, April 16, 2012 Memorandum from Janel Ryan to Bob Brooks. Prior to that point, under Mr. Brooks's contract, he was classified as "noncertified." Doc. 67, Pl. Memo ISO MSJ, at 4 ¶¶ 1–2; Doc. 82, Opp. to Pl. MSJ, at 5 ¶ 1; Doc. 67–1, 2011 Contract; Doc. 82, Opp. to Pl. MSJ, at 5 ¶ 2; Doc. 67–2, Additional Contracts.

On July 17, 2012, Mr. Brooks's attorney sent Ms. Ryan a letter stating that FMS had terminated Mr. Brooks without just cause and demanding his reinstatement or, in the alternative, requesting that he be afforded certain process, including the provision of a statement of reasons for his termination and a hearing before the local school board. Doc. 67-11, July 17, 2012 Letter from Edward Hollington to Janel Ryan. The letter relied on provisions of the New Mexico School Personnel Act (SPA), Farmington Municipal School Board Policy (FMS Policy), and Mr. Brooks's employment contract, pursuant to which a school employee who has been employed for three consecutive years may not be terminated without just cause and particular statutory

procedures for challenging a just cause determination.  N.M. Stat. Ann. § 22–10A–24(D); Doc.

67-6, FMS Policy § 4.2.5 (last modified 7/14/11); Doc. 67-1, 2011–12 Employment Contract.

In a letter dated August 10, 2012, attorneys for FMS denied Mr. Brooks's requests,

arguing that FMS was free to elect not to reemploy Mr. Brooks for the next school year without

cause and without any affording him any sort of process.  Doc. 67-8, August 10, 2012 Letter

from Carol Helms to Edward Hollington.  On August 20, 2012, attorneys for FMS advised that

FMS would reverse course and provide the reasons for Mr. Brooks's termination as well as a

hearing before the FMS School Board.  Doc. 67-12, August 20, 2012 Letter from Carol Helms to

Edward Hollington.   On August 23, 2012, however, attorneys for FMS sent another letter

denying Plaintiff's requests for a statement of reasons for his termination and a hearing before

the local school board.  Doc. 67-13, August 23, 2012 Letter from Carol Helms to Edward

Hollington.  FMS never provided a formal explanation of Mr. Brooks's "just cause" termination

under state law and municipal policy.  N.M. Stat. Ann. § 22-10A-24(d); *see* Doc. 67-6, FMS

Policy § 4.2.5; Doc. 67-10, April 16, 2012 Termination Memo from Janel Ryan to Bob Brooks;

Doc. 67-11, July 17, 2012 Letter from Edward Hollington to Janel Ryan; Doc. 67-12, August 20,

2012 Letter from Carol Helms to Edward Hollington; Doc. 67-13, August 23, 2012 Letter from

Carol Helms to Edward Hollington.

## II.    Mr. Brooks's Duties

Mr. Brooks's position at FMS involves duties that were managerial, administrative, and

clerical.  After Mr. Brooks's termination, it is clear that "some of [Mr. Brooks's former] duties

went to clerical employees." Doc. 70, Def. Memo ISO MSJ, at 7 ¶ 20.  However, it is also clear

that Mr. Brooks performed some managerial duties.  Doc. 70, Def. Memo ISO MSJ, at 9–13 ¶¶

28–47.  Of particular importance, Mr. Brooks managed district-wide software systems, including

the IFAS program, ¶¶ 28, 36, signed purchase orders and performed payroll functions, ¶¶ 29, 39, held himself out as a "Data Process Manager" and "Chief Data Officer," ¶¶ 31–34, and was paid a salary higher than non-managerial FMS staff, ¶¶ 46–47.  On the other hand, the Letter of Intent accompanying Mr. Brooks's 2011–12 contract and the contract itself did not mention that Mr. Brooks was being hired to perform any managerial functions.  Doc. 78, Pl. Opp. to Def. MSJ, at 6–7 ¶¶ 18–21; Doc. 67-1, 2011–12 Contract; Doc. 67-9, 2011 Letter of Intent.  During the 2011–12 school year in particular, Mr. Brooks's duties included:

- Supporting the IFAS program as requested;
- Teaching staff how to access, use, and write reports on the [IFAS] system as needed;
- Compiling IFAS technology manuals for the district;
- Scanning personnel documents into IFAS;
- Assisting in data conversion from previous systems into a digital system; and
- Determining which documents in storage need to be preserved.

Doc. 70-5, June 15, 2011 Memorandum from Linda Schliz and Randy Bondow to Bob Brooks.  Mr. Brooks has testified that, during his last two years of employment at FMS, Mr. Brooks did not supervise any employees and had no authority to hire, fire, or discipline any employees.  Doc. 78, Pl. Opp. to Def. MSJ, at 9 ¶ 33.  Mr. Brooks further states that he had no authority during those last two years to execute contracts or purchases,  Doc. 78, Pl. Opp. to Def. MSJ, at 9 ¶ 32, 15 ¶ 29, and that he accrued leave in the same manner a non-managerial employee would.  Doc. 78, Pl. Opp. to Def. MSJ, at 9 ¶ 34.  The term "district-wide manager" was first applied to Mr. Brooks after FMS had already decided to terminate him.  Doc. 92, Pl. Reply ISO MSJ, at 6 ¶ 10.

        At some point prior to the events at issue, Mr. Brooks obtained a temporary one-year business management license from the New Mexico Public Education Department, which was active from 2010–11.  Doc. 70, Def. Memo ISO MSJ, at 20.  While Mr. Brooks maintained this

temporary license, Mr. Brooks was never given the position for which that license applied. Doc. 78, Pl. Opp. to Def. MSJ, at 5–6 ¶ 17; Doc. 93, Def. Reply ISO Def. MSJ, at 4 ¶¶ 17–19.

### III.   Ms. Ryan's Duties

Throughout the course of Mr. Brooks's termination, Janel Ryan was Superintendent and Chief Executive Officer of FMS. N.M. Stat. Ann. § 22-1-2(I). Accordingly, from 2011–13 Ms. Ryan was "the final decision maker regarding Mr. Brooks' termination of employment." Doc. 1, Compl., at 5 ¶ 33; Doc. 56, 1st Amended Answer, at 3 ¶ 33.

In his deposition, Mr. Brooks stated that Ms. Ryan "probably" acted under genuine, good faith belief that Mr. Brooks was not entitled to any of the protections from arbitrary termination outlined in the SPA, FMS Policy, and Mr. Brooks's employment contract and that Ms. Ryan expressed concern for Mr. Brooks in her termination memorandum. Doc. 70, Def. Memo ISO MSJ, at 13–14 ¶¶ 48–49. However, Ms. Ryan also tried to change the terms of Mr. Brooks's contract by classifying him as a "classified administrator" or "district-wide manager" after deciding to terminate him in order to avoid providing Mr. Brooks with the procedural protections of the SPA, FMS Policy, and Mr. Brooks's contract. Doc. 78, Pl. Opp. to Def. MSJ, at 8–9 ¶¶ 26–30. At the time FMS terminated Mr. Brooks, Ms. Ryan believed that another, similarly situated employee, Letitia Tagge, was entitled to due process rights upon termination. Doc. 78, Pl. Opp. to Def. MSJ, at 3 ¶¶ 3–5.

### IV.   Procedural History

On December 3, 2012, Plaintiff filed his Complaint for Civil Rights Violations, Breach of Contract, and Breach of the Covenant of Good Faith and Fair Dealing. Doc. 1, Complaint. The Complaint alleges that the Defendants violated Mr. Brooks's procedural due process rights (Count I), breached Mr. Brooks's contract by failing to follow certain pre-termination procedures

(Count II) and by terminating him without just cause (Count III), and breached the covenant of good faith and fair dealing (Count IV).  Defendants filed a joint answer on December 26, 2012, Doc. 6, Answer, and subsequently amended their answer on June 21, 2013.  Doc. 56, Amended Answer.  United States Magistrate Judge W. Daniel Schnieder scheduled the close of discovery for July 11, 2013.  Doc. 18, Scheduling Order.  On August 8, 2013, after the close of discovery, Mr. Brooks filed a motion for summary judgment in his favor on Counts I through III of the Complaint.  Doc. 66, Pl. MSJ.  On August 9, 2013, Defendants filed a motion for summary judgment, seeking dismissal of all counts of the Complaint.  Doc. 69, Def. MSJ.  This Court granted Defendants' motion on March 3, 2014 based on this Court's interpretation of the word "terminated" in the SPA, holding that Mr. Brooks could not be found to have been "terminated" because FMS merely declined to renew his contract and did not commit the affirmative act of "firing" Mr. Brooks.  Doc. 123, Order Granting Def. MSJ.  Mr. Brooks appealed, and the Tenth Circuit reversed in part this Court's interpretation of the law governing this case and remanded the case for further proceedings.  *Brooks v. Bd. of Educ.*, 617 F. App'x 887 (10th Cir. 2015) (holding that Mr. Brooks could be found to have been "terminated" as the term is defined in the SPA).

## LEGAL STANDARD

### I.   <u>Summary Judgment</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247–48 (1986).  Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id*. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *See Shapolia v. Los Alamos Nat'l Lab*., 992 F.2d 1033, 1036 (10th Cir. 1993).  The moving party need not negate the nonmovant's claim, but rather must show "that there is an absence of evidence to support the nonmoving party's case."  *Celotex v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party meets its initial burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."  *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc*., 912 F.2d 1238, 1241 (10th Cir. 1991) (citation omitted).  The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment, *see Pueblo v. Neighborhood Health Ctrs., Inc.*, 847 F.2d 642, 650 (10th Cir. 1988), but rather must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324 (citation omitted).

Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence."  *Kaus v. Standard Ins. Co*., 985 F. Supp. 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998).  If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law.  *See, e.g*., *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex*, 477 U.S. at 322.

**II.**     **Due Process Claims**

Under the Fourteenth Amendment, "[a] claim of denial of procedural due process requires that the plaintiff have a constitutionally protected property interest that was injured or revoked without proper procedural protections." *Schanzenbach v. Town of La Barge,* 706 F.3d 1277, 1283–84 (10th Cir.2013).  To succeed on a procedural due process claim, a plaintiff "must show: (1) he possessed a protected interest to which due process protections were applicable; and (2) he was not afforded an appropriate level of process." *Rocky Mountain Rogues, Inc. v. Town of Alpine*, 375 F. App'x 887, 891 (10th Cir. 2010).  In order to determine whether FMS violated Mr. Brooks's due process rights, the Court must engage in a two-step inquiry.  First, the Court must determine whether Mr. Brooks had a protected interest in his job sufficient for the Due Process Clause to attach.  *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 577 (10th Cir. 1996).  Second, the Court must determine whether Mr. Brooks was afforded adequate process before he was deprived of that interest.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("once it is determined that the Due Process Clause applies, the question remains what process is due.") (quotation omitted).

In this case, the central disagreement among the parties is whether Mr. Brooks has a property interest in continued employment.  Mr. Brooks claims that he has a property interest in continued employment with FMS that vested and was violated because his employment contract was not renewed for the 2012–13 school year and he was not given a formal basis for his termination or an opportunity to challenge that basis before the school board.  Doc. 67, Pl. Memo ISO MSJ, at 9–13.   In particular, Mr. Brooks relies on provisions of the New Mexico School Personnel Act (SPA), Farmington Municipal School Board Policy (FMS Policy), and Mr. Brooks's employment contract, pursuant to which a school employee who has been employed for three consecutive years may not be terminated without just cause and particular procedures for

challenging a just cause determination.  N.M. Stat. Ann. § 22–10A–24(D); Doc. 67-6, FMS Policy § 4.2.5; Doc. 67-1, 2011–12 Employment Contract.  Defendants disagree, arguing Mr. Brooks could be terminated for any reason because the position he held is exempted from the SPA's termination protections because he provided "primarily district wide management functions" and therefore Mr. Brooks has no property interest protectable under the Fourteenth Amendment.  N.M. Stat. Ann. § 22–10A–26 (providing that "a certified school administrator" or "a non-certified school employee employed to perform primarily district wide management functions" is excepted from the procedural protections provided by the SPA).  Defendants further contend that Mr. Brooks's contractual protections and protections under FMS Policy § 4.2.5 cannot provide Mr. Brooks with a property right in continued employment because they are not authorized under the SPA and are therefore ultra vires.  *See Swinney v. Deming Bd. of Educ.*, 117 N.M. 492, 494 (1994) ("Any attempt by the Board to enter into a contract or promulgate a termination policy giving an employee rights in conflict with the [SPA] would be ultra vires and void." ).

Deciding whether Mr. Brooks has a property interest in continued employment requires a factual finding regarding whether Mr. Brooks performed "primarily district-wide management functions."  Neither party can establish the existence or non-existence of this fact with undisputed evidence.  As elaborated below, summary judgment regarding this element of Mr. Brooks's claim is DENIED for both parties.

Even when this Court does not decide summary judgment in favor of a party regarding a complete claim or cause of action, it still has the power to find on behalf of a movant regarding the establishment of specific facts that are elements of or defenses to that cause of action when adjudicating a motion for summary judgment.  FED. R. CIV. P. 56(g).  In order to clarify the

Court's factual findings on this issue and lessen the burden of the parties as they prepare for trial, this Court finds two facts legally ESTABLISHED regarding the parties' claims and defenses: Mr. Brooks is not a "certified administrator" under N.M. Stat. Ann. § 22-10A-26 and Defendants did not follow the termination procedures outlined in the FMS Policy or Mr. Brooks's employment contract when terminating Mr. Brooks.

A. Mr. Brooks's Property Interest in Continued Employment

The SPA provides a protected property interest in continued employment at FMS to Mr. Brooks unless an exception to the SPA applies. Neither party has carried their burden regarding the establishment of this fact.

Under the first element of the Due Process inquiry – determining whether Mr. Brooks had a property interest in continued employment giving rise to a constitutionally protected right – the Tenth Circuit has explained that the existence of property rights are not "natural," but are instead fundamentally derived from government action guaranteeing the protection of a party's interests. *Hyde Park Co. v. Santa Fe City Counsel*, 226 F.3d 1207, 1210 (10th Cir. 2000) (property rights "are created and . . . defined by existing rules and understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."). In determining whether a government entity has created a particular property right, the Tenth Circuit has clearly explained that state and municipal law can create property rights protected under the federal Constitution. *Clinger v. New Mexico Highlands Univ. Bd. of Regents*, 215 F.3d 1162, 1167 (10th Cir. 2000); *Teigen v. Renfrow*, 511 F.3d 1072, 1079 (10th Cir. 2007) (a property interest can be created "by independent sources such as a state or federal statute, a municipal charter or ordinance, or an implied or express contract."). And New Mexico courts have determined that a continued

interest in public employment may be a property right protected by the Due Process Clause of the Constitution.  *City of Albuquerque v. AFSCME Council 18 ex rel. Puccini*, 149 N.M. 379, 382 (2011) ("As a general principle of due process law, public employees with a legitimate expectation of continued employment are protected from termination without just cause, notice, and opportunity to be heard.").

The SPA provides due process protection to terminated FMS employees unless an exception to the SPA applies.[2]   Here, it is undisputed that Mr. Brooks was an employee of FMS. Mr. Brooks had a written contract that set forth his terms of employment and required "just cause" termination from 2011–12.  Doc. 67, Pl. Memo ISO MSJ, at 4 ¶ 1; Doc. 82, Opp. to Pl. MSJ, at 5 ¶ 1; Doc. 67–1, 2011 Contract, at ¶ 6.  It is also undisputed that Mr. Brooks had been contracted by FMS since 1995 and that his one-year contracts had held nearly identical language from 2000–12.  Doc. 67, Pl. Memo ISO MSJ, at 4 ¶ 2; Doc. 82, Opp. to Pl. MSJ, at 5 ¶ 2; Doc. 67–2, Additional Contracts.  Furthermore, all parties have asserted, and the Tenth Circuit has held, that the SPA governs these contracts.  *Brooks v. Bd. of Educ.,* 617 F. App'x 887, 889–90 (10th Cir. 2015).  If no exception applies, pursuant to the 1994 amendments to the SPA, the SPA grants "certain procedural rights, formerly available only to certified employees, to noncertified employees" like Mr. Brooks.  617 F. App'x 887, 889–90; *Gadsden Fed. of Teachers v. Bd. of Educ.,* 122 N.M. 98, 99 (N.M. Ct. App. 1996).   In particular, "a noncertified employee with a written employment contract is treated the same as a noncertified employee who does not have a contract" and the statute provides that "a noncertified employee with a contract employment has been terminated when his contract is not renewed."  N.M. Stat. Ann. § 22-10A-24 (2003);

---

[2] Public entities can create a property right in continued employment and such a property right is assumed to entail "protection from termination without just cause, notice, and opportunity to be heard." *City of Albuquerque*, 149 N.M. at 382.

*Brooks*, 617 F. App'x at 889–90.  As a result, Mr. Brooks had a property interest in his continued employment at the time FMS terminated his contract, unless an exception applies such that Mr. Brooks is not protected by the SPA.  *See* 889–90.

Defendants contend that only the SPA, and not FMS Policy and Mr. Brooks's contract, can provide Mr. Brooks with a property interest giving rise to Due Process protection because any attempt by FMS to create a property interest beyond the SPA is ultra vires and void.  Doc. 70, Def. Memo ISO MSJ, at 21.  Previously, the New Mexico Supreme Court determined that local school boards have no authority to promulgate policies or enter into contracts that grant additional property rights beyond those specified by the SPA.  *Swinney v. Deming Bd. of Educ.*, 117 N.M. 492, 494 (1994).  In *Swinney*, the plaintiff, Superintendent of Schools in Deming, New Mexico, claimed that his termination breached the terms of his employment contract.  *Id.* at 492. The Court agreed that the terms of the contract were breached, but held that Swinney still had no cause of action against the Deming Board of Education because the school district had no authority under the SPA to authorize the terms of the contract.  *Id.* at 494.  Although the majority opinion in Swinney only states that local school boards could not promulgate policies "in conflict with [the SPA]," it is clear, as the dissent by Chief Justice Montgomery points out, that because the benefits the New Mexico Supreme Court denied Swinney were not explicitly forbidden by the SPA, the majority opinion in that case must have meant that local school boards cannot provide benefits to their employees "in conflict with . . . or broader than [the SPA]."  *Id.* at 494 (Montgomery, C.J., dissenting).  The Tenth Circuit confirmed this interpretation of *Swinney* in Mr. Brooks's previous appeal in this case.  *Brooks*, 617 F. App'x at 890 ("his employment contract cannot give Brooks any more rights than he otherwise has under state law.").  Because the New Mexico Supreme Court determined in *Swinney* that municipal entities cannot create

employment rights beyond those permitted in the SPA for their educators, Mr. Brooks cannot claim that he has a property right stemming from his contract or FMS Policy 4.2.5 unless that property right is also authorized under the SPA.

      **B.**  <u>Neither Party Has Met Their Burden on Summary Judgment of Proving that Mr. Brooks Falls or Does Not Fall within One of the Exceptions to the SPA.</u>

Defendants have repeatedly argued that Mr. Brooks is not protected by the SPA because Mr. Brooks falls within one of the specific statutory exemptions to SPA's protections from unjust termination. Doc. 70, Def. Memo ISO MSJ, at 14–19; Doc. 82, Opp. to Pl. MSJ, at 9–13. In particular, the SPA states that its protections do not apply to the following:

A. a certified school instructor employed to fill the position of a certified school instructor entering military service;

B. a person who is employed as a <u>certified school administrator</u>; or

C. a non-certified school employee employed to perform <u>primarily district wide management functions</u>.

N.M. Stat. Ann. § 22-10A-26 (emphasis added). Here, Defendants assert that an exception applies either because Mr. Brooks performed primarily district-wide management functions or because Mr. Brooks was a certified school administrator. Doc. 70, Def. Memo ISO MSJ, at 14–19; Doc. 82, Opp. to Pl. MSJ, at 9–13.

Neither party can establish the existence or non-existence of the facts required to adjudicate whether an exception to the SPA applies to Mr. Brooks. Summary judgment regarding this element of Mr. Brooks's claim is therefore DENIED for both parties, as elaborated below.

### *i. Primarily District-Wide Management Functions Exception*

The key exception to the SPA at issue in this case is the "primarily district-wide management functions" exception. N.M. Stat. Ann. § 22-10A-26.

Defendants argue that the SPA precludes due process protection for Mr. Brooks in this case because Mr. Brooks is a "non-certified school employee employed to perform primarily district wide management functions" under New Mexico Statutes § 22-10A-26(C).  Doc. 70, Def. Memo ISO MSJ, at 16.  Mr. Brooks disagrees and offers evidence that his duties were not "primarily district wide management functions."  Doc. 78, Pl. Opp. to Defendants' MSJ, at 24–27.  The fulcrum of this dispute pivots on what duties Mr. Brooks was required to perform and how much of his time and effort was spent on each of his duties.  The Court notes at the outset of this analysis that which of Mr. Brooks's duties are "managerial," which are "non-managerial," and how the totality of these duties should be "primarily" categorized is a fact-intensive inquiry.  Neither party contends that Mr. Brooks performed no district-wide management functions or that Mr. Brooks performed exclusively district-wide management functions.  Rather, both parties contest which and how many of Mr. Brooks's former duties should be considered managerial rather than non-managerial.  While Defendants concede that "some of [Mr. Brooks's former] duties went to clerical employees," Doc. 70, Def. MSJ, at 7 ¶ 20, Defendants also provide a list of facts that indicate that Mr. Brooks nonetheless in their opinion performed primarily district-wide management functions.  Doc. 70, Def. Memo ISO MSJ, at 9–13 ¶¶ 28–47.  Of particular importance, Defendants assert that Mr. Brooks managed district-wide software systems, including the IFAS program, ¶¶ 28, 36, signed purchase orders and performed payroll functions, ¶¶ 29, 39, held himself out as a "Data Process Manager" and "Chief Data Officer," ¶¶ 31–34, and was paid a salary higher than most non-managerial FMS staff, ¶¶ 46–47.

Mr. Brooks counters that the Letter of Intent accompanying Mr. Brooks's 2011–12 contract and the contract itself did not mention that Mr. Brooks was being hired to perform any district-wide management functions and does apply the protections of the SPA to the contract,

indicating that FMS did not intend for the exceptions to the SPA to apply in Mr. Brooks's case. Doc. 78, Pl. Opp. to Def. MSJ, at 6–7 ¶¶ 18–21; Doc. 67-1, 2011–12 Contract; Doc. 67-9, 2011 Letter of Intent.  Defendants do not dispute these facts.  Doc. 93, Def. Reply to Pl. Opp. to Def. MSJ, at 4–5 ¶¶ 18–21.  Mr. Brooks also states that, during his last two years of employment at FMS, Mr. Brooks did not supervise any employees and had no authority to hire, fire, or discipline any employees.  Doc. 78, Pl. Opp. to Def. MSJ, at 9 ¶ 33.  Mr. Brooks states that he had no authority during those last two years to execute contracts or purchases.  Doc. 78, Pl. Opp. to Def. MSJ, at 9 ¶ 32, 15 ¶ 29.  Mr. Brooks further asserts that he accrued leave in the same manner non-managerial employees would.  Doc. 78, Pl. Opp. to Def. MSJ, at 9 ¶ 34.  All these facts cut against a finding that Mr. Brooks primarily provided district-wide management while employed at FMS.[3]

To summarize, the parties have asserted and counter-asserted a substantial volume of facts regarding Mr. Brooks's duties, and it is clear that a "genuine dispute as to [the] material fact" of whether Mr. Brooks performed <u>primarily</u> district-wide management functions exists. Fed. R. Civ. P. 56(a); *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999).  Ultimately, whether Mr. Brooks performed <u>primarily</u> district-wide management functions requires a qualitative and quantitative weighing of the facts best reserved for a careful analysis of the evidence presented to a finder of fact at trial.

### ii.   Certified School Administrator Exception

Defendants have argued in the alternative that even if Mr. Brooks did not primarily perform district-wide management functions, Mr. Brooks still cannot qualify for SPA protection

---

[3] For reasons that are unclear, neither party relied on the actual list of duties provided to Mr. Brooks by Linda Schliz and Randy Bondow in 2011, which seems to indicate that Mr. Brooks's duties primarily involved compiling and scanning data, which do not appear to be district-wide management functions.  Doc. 70-5, June 15, 2011 Memorandum from Linda Schliz and Randy Bondow to Bob Brooks.

because he qualified as a "certified school administrator" under another SPA exception.  Doc. 70, Def. Memo ISO MSJ, at 20; N.M. Stat. Ann. § 22-10A-26.  Defendant contends that Mr. Brooks qualifies as "certified" because he obtained a temporary one-year business management license from the New Mexico Public Education Department from 2010–11.  Doc. 70, Def. Memo ISO MSJ, at 20.[4]

Certification requirements for FMS employees under the SPA are well established.  *See* N.M. Stat. Ann. § 22-10A-3 (establishing licensure requirements for FMS employees).  The SPA requires licensure for certain FMS employees, and FMS Policy Section 4.3 elaborates those licensure requirements for instructors and administrators.  Doc. 67-6, FMS Policy § 4.3.  FMS Policy Section 4.3.1 states that "[e]very instructor or administrator who serves either on a full or part time basis in the public schools of New Mexico must hold a valid New Mexico teaching license."  Doc. 67-6, FMS Policy § 4.3.1.

Under the SPA and FMS Policy 4.3.1, a "certified school administrator" means an administrator practicing the profession of administrator pursuant to an administrator's license.  N.M. Stat. Ann. § 22-10A-3; *see Naranjo v. Bd. of Educ. of Espanola Pub. Sch.*, 119 N.M. 401, 403–05 (1995) (interpreting the phrase "certified administrator" under the SPA).  In *Naranjo*, the Supreme Court of New Mexico elaborated on the legislative history of the SPA regarding the certified administrator exception.  There, the Court contrasted the tenure rights of "certified administrators" with "certified instructors" who later became administrators, noting that "a

---

[4]  This exception appears to be the original justification for Mr. Brooks's termination.  Relying on the language of the SPA regarding the certified administrator exception to employee tenure rights, Ms. Ryan states in the termination memorandum from Ms. Ryan to Mr. Brooks that Mr. Brooks was being terminated without explanation of cause because "[certified a]dministrators may be terminated for any reason deemed sufficient by the superintendent."  Doc. 67-10, April 16, 2012 Memorandum from Janel Ryan to Bob Brooks.

  Perhaps recognizing the weakness of this argument, Defendants chose not to assert it on appeal to the Tenth Circuit, stating that "[i]t is undisputed that Plaintiff was not a certified school administrator."  Brief for Defendant-Respondent at * 13, *Brooks v. Bd. of Ed.*, No 14-2077, 2013 WL 9743939 (10th Cir. 2015).

certified school instructor with tenure rights who has been hired within the same school district in an administrative capacity shall not have his tenure rights extinguished." 119 N.M. at 403 (quoting SPA Section 22-10-14(B) as modified in 1983); *see Atencio v. Board of Educ. of Penasco Independent Sch. Dist. No. 4*, 99 N.M. 168, 170–72 (1982) (tenure rights voided when plaintiff employed as an administrator and had certification as both a school instructor <u>and</u> an administrator); *Naranjo*, 119 N.M. at 403 (interpreting *Atencio*). Implicit in the Court's reasoning was the fact that an employee's instructor certification could not qualify as the "certification" required to transform plaintiff into a "certified administrator" and deny an employee tenure rights. Instead, to qualify as a "certified administrator," an employee would need to have an administrator certification, not an instructor certification. *See id*. This analysis comports with the plain-language reading of the SPA, which states that a "person administering in a public school . . . shall hold a valid license or certificate from the department authorizing the person to perform <u>that</u> function." N.M. Stat. Ann. § 22-10A-3 (emphasis added). Restated, the license possessed by an administrator under the SPA must map on to the license required for the position for which the administrator was hired.

Here, while Mr. Brooks did have a temporary business manager's license, Defendants concede that Mr. Brooks was never given the position for which that license applied. Doc. 78, Pl. Opp. to Def. MSJ, at 5–6 ¶ 17; Doc. 93, Def. Reply ISO Def. MSJ, at 4 ¶¶ 17–19. Furthermore, it is undisputed that prior to that point, under Mr. Brooks's contract, he was classified by FMS as "noncertified." Doc. 67, Pl. Memo ISO MSJ, at 4 ¶ 1; Doc. 82, Opp. to Pl. MSJ, at 5 ¶ 1. In addition, Mr. Brooks's contracts themselves label Mr. Brooks as a noncertified employee. Doc. 67–1, 2011 Contract; Doc. 67, Pl. Memo ISO MSJ, at 4 ¶ 2; Doc. 82, Opp. to Pl. MSJ, at 5 ¶ 2; Doc. 67–2, Additional Contracts. Because Mr. Brooks never practiced under

19

his temporary business management license and because his contracts with FMS specified that he was noncertified, obtaining a temporary business management license did not void the tenure rights that Mr. Brooks would have otherwise vested by working as an uncertified employee. Resultantly, Defendants' reliance on this exception is misplaced because Mr. Brooks was never certified by the New Mexico Public Education Department for the position that he held, and therefore cannot be considered a certified administrator.

Following the above analysis, the Parties' Cross Motions regarding Mr. Brooks's Due Process rights are DENIED. However, it is ESTABLISHED that Mr. Brooks was not a certified administrator for the purposes of the exception at issue.

## C.  FMS Did Not Provide Mr. Brooks with a Process to Contest His Termination.

Here, the issue of whether an SPA exception applied to Mr. Brooks precludes this Court from finding summary judgment for either party on Mr. Brooks's due process claim. *See* Section II(B), *supra*. However, even when this Court does not decide summary judgment in favor of a party regarding a complete claim or cause of action, it still has the power to find on behalf of a movant regarding the establishment of specific facts that are elements of or defenses to that cause of action. FED. R. CIV. P. 56(g).  In order to clarify the Court's factual findings on this issue and lessen the burden of the parties as they prepare for trial, this Court now considers the second prong of Mr. Brooks's due process claim under Rule 56(g) and finds that Defendants did not follow the termination procedures outlined in the FMS Policy or Mr. Brooks's employment contract.

In the Tenth Circuit, after a property right is proven to exist, a plaintiff asserting a procedural due process claim must further assert that he was deprived of that property right without adequate procedure. *Stearns v. Sheridan County Mem'l Hosp. Bd. of Trs.*, 491 F.3d

1160, 1162 (10th Cir. 2007) ("A successful procedural due process claim requires a plaintiff to show . . . the deprivation of a liberty or property interest").  Judges within the Tenth Circuit have sometimes stated that a plaintiff must prove the essential elements of their claim "beyond a reasonable doubt" in order to establish that summary judgment in their favor is warranted. *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002), *as amended on denial of reh'g* (Jan. 23, 2003); *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008).

Mr. Brooks has moved that the Court determine on summary judgment that FMS did not provide him with the tenure protections specified in the SPA, FMS Policy, or his employment contract.  Doc. 67, Pl. Memo ISO MSJ, at 12–13.  Defendants argue against this by asserting, again, that Mr. Brooks is entitled to no due process because he is not protected under the SPA due to either the "district wide management functions" or "certified administrator" exception. Doc. 82, Opp. to Pl. MSJ, at 10–13.  Defendants did not attempt to argue that they did follow the procedures for terminating a non-administrative employee when they terminated Mr. Brooks.

The government has the ability to assign property rights to its citizens and define the scope of those rights.  *Hyde Park Co.*, 226 F.3d at 1210.  Derivative of the power to define property rights is the power to determine what process is due when a property-holder is deprived of his or her property rights.  *See id.* (explaining that state and local governments have the right to define the scope of a property right).  Thus, in determining whether the Fourteenth Amendment is satisfied, the underlying source of law can determine what procedure is due, *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 9–22 (1978) (holding that a public utility cannot terminate a customer's service without due process once state law provided that service could only be cutoff for "cause"), as long as it satisfies the constitutional minimum of the Fourteenth Amendment.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 554 (1985); *Arnett*

*v. Kennedy*, 416 U.S. 134, 167 (1974) (Powell, J. concurring) (rejecting the position of the dissenting justices that state law alone would define the extent of due process protection). As elaborated by the Supreme Court in *Memphis Light, Gas & Water*, when the procedure offered to a petitioner by state law fails to satisfy the constitutional minimum, a due process violation has occurred. *Memphis Light, Gas & Water Div.*, 436 U.S. at 19 (rejecting the notion that state "common-law remedies of a pretermination injunction, a post-termination suit for damages, and post-payment action for a refund are sufficient to cure [deficiencies in the utility company's] procedures.").

At a minimum, the Due Process Clause of the Constitution requires that the government provide notice of the deprivation, *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), a meaningful, typically pre-deprivation hearing, *Goldberg v. Kelly*, 397 U.S. 254 (1970), and an impartial adjudicator of the matter in dispute. *Caperton v. A.T. Massey Coal Co., Inc.*, 129 S. Ct. 2252 (2009). To determine if the constitutional minimum for due process has been satisfied, courts apply the three-factor test elaborated by the Supreme Court in *Matthews v. Eldridge*:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335 (1976) (citations omitted); *McDonald v. Wise*, 769 F.3d 1202, 1213 (10th Cir. 2014) (analyzing a procedural due process claim under the *Matthews* test).

New Mexico has determined that due process is satisfied in cases regarding the termination of public employment when employees "are protected from termination without just cause" and, when terminated, are provided with "notice, and opportunity to be heard." *City of*

*Albuquerque v. AFSCME Council 18 ex rel. Puccini*, 149 N.M. 379, 382 (2011).   These protections are codified in the SPA as follows: for employees with less than three years of consecutive service, "[a] local school board or governing authority of a state agency may terminate an employee . . . for any reason it deems sufficient."  N.M. Stat. Ann. § 22-10A-24(a). The SPA has explained that these employees will be provided a basis for the decision to terminate upon request of the employee.  N.M. Stat. Ann. § 22-10A-24(a).  However, when a school board terminates an employee once that employee has been employed by a school district or state agency for three consecutive years, that employee:

> may request an opportunity to make a statement to the local school board or governing authority on the decision to terminate him by submitting a written request to the local superintendent or administrator within five working days from the date written notice of termination is served upon him. The employee may also request in writing the reasons for the action to terminate him. The local superintendent or administrator shall provide written reasons for the notice of termination to the employee within five working days from the date the written request for a meeting and the written request for the reasons were received by the local superintendent or administrator.

N.M. Stat. Ann. § 22-10A-24(c).  Furthermore, that employee may not be terminated "without just cause," N.M. Stat. Ann. § 22-10A-24(d), and particular procedures will govern any termination hearing.  N.M. Stat. Ann. § 22-10A-24(e)–(f).

The FMS Policy implements those SPA provisions by providing that:  "the dismissal of school employees and administrators shall conform to the Public Education Department regulations and . . . [the] School Personnel Act."   Doc. 67-6, FMS Policy § 4.2.5.  The FMS Policy then goes on to explain that:

>  "Terminate" means the act of not re-employing an employee for the ensuing school year.
>
> . . .

An employee with less than three (3) years of consecutive service in the same classification may be terminated for any reason deemed sufficient by the Superintendent.

A licensed school administrator may be terminated for any reason deemed sufficient by the superintendent. . . .

An employee who has been employed by the district for three (3) consecutive years may not be terminated without "just cause."

An employee who has been employed by the district for three (3) consecutive years and who receives a notice of termination pursuant to [SPA Section] 22-10A-24, may request an opportunity to make a statement to the local school board or governing authority on the decision to terminate him by submitting a written request to the local superintendent or administrator within five (5) working days from the date written notice of termination is served upon him.  The employee may also request in writing the reasons for the action to terminate him.  The local superintendent or administrator shall provide written reasons for the notice of termination to the employee within five (5) working days from the date the written request for a meeting and the written request for the reasons were received by the local superintendent or administrator.

A . . . licensed school administrator may not be discharged without "just cause",

Prior to any formal recommendation being sent to the Superintendent for termination, the employee will have the opportunity to meet with the Assistant Superintendent of Human Resources and be accompanied by a representative of the employee's choice.

The licensed school administrator being recommended for termination will have the opportunity to meet with the Superintendent and be accompanied by a representative of the employee's choice.

Doc. 67-6, FMS Policy § 4.2.5 (emphasis added).  Because there has been no allegation by Mr. Brooks that these protections fall short of the constitutional minimum, the Court need only analyze whether these protections were satisfied in this case to determine if a violation of the Fourteenth Amendment occurred.  *See Memphis Light, Gas & Water Div.*, 436 U.S. at 19.

Here, FMS never provided a formal explanation of Mr. Brooks's "just cause" termination as required by state law and municipal policy.  N.M. Stat. Ann. § 22-10A-24(d); Doc. 67-6, FMS

Policy § 4.2.5; Doc. 67-10, April 16, 2012 Termination Memo from Janel Ryan to Bob Brooks; Doc. 67-11, July 17, 2012 Letter from Edward Hollington to Janel Ryan; Doc. 67-12, August 20, 2012 Letter from Carol Helms to Edward Hollington; Doc. 67-13, August 23, 2012 Letter from Carol Helms to Edward Hollington.   However, Defendants did explain in their briefing that "by the beginning of 2011, it was clear that [Mr. Brooks] was not properly implementing [the IFAS program], and his repeated contacts to SunGuard, the software company responsible for IFAS, was costing [FMS] unnecessary amounts of money."   Doc. 70, Def. Memo ISO MSJ, at 2. Furthermore, Mr. Brooks had a reputation for not "working well with others" and had attended mediations related to these issues.   Doc. 70, Def. Memo ISO MSJ, at 2, 4.   While this may explain why FMS terminated Mr. Brooks, it does not fulfill the requirements that "[t]he local superintendent or administrator shall provide written reasons for the notice of termination to the employee" because FMS never provided Mr. Brooks a written reason.   N.M. Stat. Ann. § 22-10A-24(c); Doc. 67-6, FMS Policy § 4.2.5.

Not only was Mr. Brooks never provided a "just cause" explanation for his termination, he was also never provided an opportunity to contest his termination at a hearing before FMS, even though he requested that opportunity.   Doc. 67-10, April 16, 2012 Termination Memo from Janel Ryan to Bob Brooks; Doc. 67-11, July 17, 2012 Letter from Edward Hollington to Janel Ryan.   At one point, FMS agreed to provide Mr. Brooks with a hearing before the school board and to set forth the reasons for his termination.   Doc. 67-12, August 20, 2012 Letter from Carol Helms to Edward Hollington.   However, three days later FMS reversed its decision and denied all of Mr. Brooks's requested procedural relief.   Doc. 67-13, August 23, 2012 Letter from Carol

Helms to Edward Hollington.[5]   Like the failure to specify the "just cause" for which FMS terminated Mr. Brooks, the failure to provide a forum for Mr. Brooks to challenge his termination does not fulfill the requirements that FMS provide Mr. Brooks the opportunity "to make a statement to the local school board or governing authority on the decision to terminate him" or "to meet with the Assistant Superintendent of Human Resources and be accompanied by a representative of the employee's choice."   N.M. Stat. Ann. § 22-10A-24; Doc. 67-6, FMS Policy § 4.2.5.  FMS has submitted no evidence to dispute these claims.

As explained in the preceding section, the Court cannot grant summary judgment for either party on Mr. Brooks's due process claims because neither party can resolve, based on the undisputed facts, whether Mr. Brooks performed "primarily district-wide management functions."   However, the Defendants have not disputed that they did not provide Mr. Brooks with the procedures outlined in the SPA, FMS Policy, or his employment contract, and have instead relied on the defense that these protections did not apply to Mr. Brooks because he fell within an exception to the SPA.   Given the undisputed facts in this case and the foregoing analysis, the Court finds that it is ESTABLISHED that the Defendants did not follow the termination procedures outlined in the FMS Policy or Mr. Brooks's employment contract.[6]

### III.   Contract and Quasi-Contract Claims

In addition to the Due Process questions addressed above, the Parties have raised issues for summary judgment regarding Mr. Brooks's contract and quasi-contract claims.  These claims factually overlap with the Due Process claims in this case.  Because neither party has proved through undisputed facts whether Mr. Brooks performed "primarily district-wide management

---

[5] Defendants do not assert in their MSJ or opposition to Mr. Brooks's MSJ that Mr. Brooks waived his due process rights by failing to timely assert them.  Doc. 82, Def. Opp. to Pl. MSJ, at 7–13; Doc. 70, Def. Memo ISO MSJ, at 14–21.

[6] The Court does not specifically extend this Order to include the policies outlined in the SPA because of the issues raised by the Defendants regarding exceptions to the SPA.

functions," Mr. Brooks's contract and quasi-contract claims cannot be resolved on summary judgment.

    A.  <u>Breach of Contract</u>

In order to prove breach of contract, Mr. Brooks must demonstrate that a valid, enforceable contract existed between himself and FMS and that FMS violated the contract. *Bd. of Educ. v. Jennings*, 98 N.M. 602, 609–10 (Ct. App. 1982) (enforcing the terms of a contract between a school board and its employee). Here, it is undisputed that a valid contract existed between FMS and Mr. Brooks. Doc. 67–1, 2011 Contract. The question at issue is whether FMS breached that contract by failing to provide the contractually specified procedures when making a determination to terminate Mr. Brooks. Doc. 67, Pl. Memo ISO MSJ, at 13–15. As explained above, the New Mexico Supreme Court has determined that Mr. Brooks's employment contract cannot provide additional rights beyond what is specified in the SPA. *Swinney*, 117 N.M. at 494. As a result, with the exception of the good faith and fair dealing claim, the breach of contract claims necessarily overlap with Mr. Brooks's constitutional claims, namely that Mr. Brooks was terminated without an explanation of "just cause" and without the proper termination procedures. Doc. 1, Compl. at 7–8. Recognizing this overlap, Defendants rely on the same legal theories to oppose Mr. Brooks's contract claims as they do to oppose Mr. Brooks's constitutional claims, namely that because the "primarily district wide management function" exception to the SPA applies to Mr. Brooks, Mr. Brooks is not entitled to the procedural protections specified by his contract, FMS policy, or the SPA. Doc. 82, Def. Opp. to Pl. MSJ, at 13–14.

Defendants are correct that under the only logical reading of the majority opinion in *Swinney*, Mr. Brooks cannot establish a breach of contract claim for a violation of procedural rights pursuant to the contract if those rights lie <u>outside</u> the scope of the SPA. 117 N.M. at 494

(Montgomery, C.J., dissenting).  However, under the majority opinion, Mr. Brooks may still bring breach of contract claims for failure to abide by procedures <u>within</u> the scope of the SPA. 117 N.M. at 494.  As explained above regarding Mr. Brooks's due process claims, because neither party has carried their burden of proof on summary judgment in establishing whether an exception to the SPA applies in this case, *see Pelt*, 539 F.3d at 1280, this Court is unable to resolve Mr. Brooks's breach of contract claims against FMS on summary judgment.

B. <u>Covenant of Good Faith and Fair Dealing</u>

Mr. Brooks also asserts in his complaint that FMS violated the covenant of good faith and fair dealing in terminating him.  Doc. 1, Compl., at 8–9.  To prove his breach of the covenant of good faith and fair dealing claim, Mr. Brooks must prove that FMS acted in bad faith in performing the contract.  *Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 115 N.M. 690, 706 (1993).  Defendants moved for summary judgment on Mr. Brooks's breach of the covenant of good faith and fair dealing claim by arguing that the claim is precluded under the New Mexico Tort Claims Act.  Doc. 70, Def. Memo ISO MSJ, at 22.  While quasi-contract tort claims against municipal entities that sound in tort may be precluded under the New Mexico Tort Claims Act, *El Dorado Util., Inc. v. Eldorado Area Water & Sanitation Dist.*, 137 N.M. 217, 223 (2005) (precluding a tortious interference of contract claim), claims for a breach of the covenant of good faith and fair dealing sound in contract, and not tort, law.  *Eoff v. New Mexico Corr. Dept.*, No 10-0598, 2010 WL 5477679, at *9 (D.N.M. Dec. 20, 2010) ("New Mexico courts have recognized a cause of action for breach of the covenant of good faith and fair dealing sounding in contract.").  Because Mr. Brooks's claim for breach of the covenant of good faith and fair dealing are fundamentally contract, rather than tort, claims, Mr. Brooks's claims regarding breach of the covenant of good faith and fair dealing are not precluded by the New Mexico Tort

Claims Act.  *See El Dorado Util., Inc.*, 137 N.M. at 223 (precluding a quasi-contract claim under the New Mexico Tort Claims Act because it sounded primarily in tort law).

Based on the foregoing analysis, the Parties' Cross Motions regarding Mr. Brooks's contract and quasi-contract claims are DENIED.  To the extent Defendants seek summary judgment against these claims regarding Ms. Ryan's individual liability, as explained below, because Ms. Ryan was not privy to the contract between Mr. Brooks and FMS, no implied covenant under that contract exists giving rise to individual liability for Ms. Ryan.

## IV.   <u>Ms. Ryan's Liability</u>

Defendants have moved that Ms. Ryan be dismissed from Mr. Brooks's claims.  In particular, Defendants assert that Mr. Brooks's state law contract and quasi-contract claims fail for lack of privity and that Mr. Brooks's constitutional claims fail on qualified immunity grounds.  Doc. 70, Def. Memo ISO MSJ, at 23–27.  As elaborated below, Ms. Ryan has no liability for Mr. Brooks's contract and quasi-contract claims because no privity of contract existed between Ms. Ryan and Mr. Brooks.  However, a trier of fact may find Ms. Ryan liable in her official capacity for alleged Due Process violations at FMS because she was the final decisionmaker for FMS.

### A.  <u>Constitutional Claims</u>

This Court previously granted Defendants' motion regarding Ms. Ryan's qualified immunity to Mr. Brooks's constitutional claims against her in her individual capacity.  *See* Doc. 123, Order, at 7.  The Tenth Circuit affirmed this order and explained that because Mr. Brooks's rights were not clearly established by his employment contract, Ms. Ryan was entitled to qualified immunity in her individual capacity.  *Brooks,* 617 F. App'x at 891 & 891 n.2.

While the claims against Ms. Ryan in her individual capacity fail, the claims against Ms. Ryan in her official capacity may proceed.  The constitutional claims against Ms. Brooks in her official capacity utilize the same analysis as Mr. Brooks's constitutional claims against FMS under the Civil Rights Act of 1871, 42 U.S.C. § 1983.  *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); SHELDON NAHMOD, CIVIL RIGHTS AND CIVIL LIBERTIES LITIGATION: THE LAW OF SECTION 1983 § 6:14 (Thompson Reuters, 4th ed. 2013) (hereinafter "NAHMOD") ("a §1983 damages suit against a local government official in his or her official capacity is a suit against the local government itself").  Because this analysis is duplicative of the Court's analysis regarding FMS' potential liability on the Due Process claims, it is not analyzed in detail here, and is instead addressed below in Section V in conjunction with FMS's constitutional liability.

### B.  Contract and Quasi-Contract Claims

In addition to moving that the Court dismiss Ms. Ryan from the suit on the basis of qualified immunity, Defendants also request that Ms. Ryan be dismissed from Mr. Brooks's state law claims because no privity of contract exists between Mr. Brooks and Ms. Ryan.  Doc. 70, Def. MSJ, at 23–24.  As a general principle of contract law, Mr. Brooks must show the existence of a valid and enforceable contract between himself and Ms. Ryan sufficient to establish privity between the parties before he can satisfy the necessary elements to assert his contract claims.  *McCasland v. Prather*, 92 N.M. 192, 194 (N.M. Ct. App. 1978) ("Generally, a complaint on breach of contract must allege: (1) the existence of a valid and binding contract; (2) the plaintiff's compliance with the contract and his performance of the obligations under it; (3) a general averment of the performance of any condition precedent; and (4) damages suffered as a result of defendant's breach.").  While privity of contract is not a necessary element for all quasi-contract claims, e.g., claims of unjust enrichment, *Tate ex rel. Gary v. Fireman's Fund Indem. Co.*, 67

N.M. 360, 364 (1960); RESTATEMENT (SECOND) OF CONTRACTS § 4 cmt. b (AM. LAW INST. 1979), privity of contract is necessary to prevail on a claim for the breach of the covenant of good faith and fair dealing, the quasi-contract claim asserted by Mr. Brooks in this case. *Continental Potash, Inc. v. Freeport-McMoran, Inc.*, 115 N.M. 690, 706 (1993).  In particular, a breach of the covenant of good faith and fair dealing requires privity because the covenant does not arise until a contract is entered into by the parties.  *Id.*

In this case, Mr. Brooks does not dispute that FMS, and not Ms. Ryan, is the counterparty to the contracts at issue.  Doc. 78, Brooks Opp. to Def. MSJ, at 24–31; *see, e.g.*, Doc. 67-1, 2011 Contract.  Because there is no privity of contract between Mr. Brooks and Ms. Ryan, and Mr. Brooks has asserted no alternative theory that would create such privity, Mr. Brooks's contract and quasi-contract claims should be dismissed regarding Ms. Ryan.  Concurrently, because the school board is the counterparty to Mr. Brooks's contract, to the extent that triable issues of fact remain regarding FMS's liability (as discussed above), Mr. Brooks's contract and quasi-contract claims may proceed against FMS.

Accordingly, Defendants' Motion regarding Ms. Ryan's liability for Mr. Brooks's contract and quasi-contract claims is GRANTED because no privity of contract existed between Ms. Ryan and Mr. Brooks.  However, as explained below, Defendants' Motion regarding Ms. Ryan's constitutional liability in her official capacity is DENIED because she was the final decisionmaker for FMS.  Defendants' Motion to dismiss Ms. Ryan in her individual capacity on the basis of qualified immunity was previously GRANTED by this Court and AFFIRMED by the Tenth Circuit.

**V.      FMS Liability**

Defendants assert that FMS and Ms. Ryan in her official capacity cannot be subject to Mr. Brooks's constitutional claims because Mr. Brooks cannot point to an official policy or custom of FMS that resulted in Mr. Brooks's termination.  Doc. 70, Def. Memo ISO MSJ, at 19–20.  Defendants cannot prevail on this argument because Ms. Ryan was the final decisionmaker for FMS at the time FMS terminated Mr. Brooks and there is enough factual evidence for a trier of fact to conclude that Ms. Ryan was responsible for terminating Mr. Brooks.

In *Monell v. Department of Social Services*, the Supreme Court held that a plaintiff may sue a municipality for damages under the 1871 Civil Rights Act when "the action that is alleged to be unconstitutional implements a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decision-making channels."   436 U.S. 658, 690–91 (1978) (citing 42 U.S.C. § 1983).   A municipality, however, may not be held liable under Section 1983 merely because its employees inflicted injury pursuant to a theory of *respondeat superior*.  *Lujan ex rel Lujan v. Cnty of Bernalillo*, 354 F. App'x 322, 326 (10th Cir. 2009); *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006).  Rather, to establish a prima facia case of municipal liability, a plaintiff must demonstrate that (1) a constitutional violation occurred, (2) a municipal policy or custom exists, and (3) there is a direct causal link between the policy or custom and the injury alleged—i.e., that the policy or custom was the "moving force" behind the alleged injury.   *See City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989).

Mr. Brooks argues that he need not point to an official municipal policy or custom because his termination was decided by Ms. Ryan, the superintendent of FMS, and her decisions regarding termination themselves constitute an official municipal policy or custom.  *See Kelley v.*

*City of Albuquerque*, 375 F.Supp.2d 1183, 1205 (D.N.M. 2004) ("When the highest authority for the municipality makes the decision, that is evidence enough of a policy."); NAHMOD at § 6:9; ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 8:5 (Wolters Kluwer 6th Ed. 2012) (hereinafter "CHEMERINSKY"). Mr. Brooks is right that the decision by Mr. Ryan may constitute an official policy. For instance, in *Pembaur v. City of Cincinnati*, the Supreme Court held that a decision by a local prosecutor to break down the door of a doctor's office constituted an official custom or policy under *Monell* because it constituted "a deliberate choice to follow a course of action . . . from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." 475 U.S. 469, 483–84 (1986). More recently, the Tenth Circuit held that municipal liability under Section 1983 attaches "where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered" and further specified "if the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood." *Beedle v. Wilson*, 422 F.3d 1059, 1068 (10th Cir. 2005) (quotations omitted).

Under New Mexico law, Ms. Ryan is the Chief Executive Officer of FMS. N.M. Stat. Ann. § 22-1-2(I) ("'local superintendent' means the chief executive officer of a school district"). Moreover, Defendants conceded in their Amended Answer to Mr. Brooks's complaint that Ms. Ryan was the final decisionmaker on behalf of FMS in this case, admitting that "Defendant Ryan was the final decision maker regarding Mr. Brooks' termination of employment." Doc. 1, Compl., at 5 ¶ 33; Doc. 56, 1st Amended Answer, at 3 ¶ 33.

Because New Mexico state law gives Ms. Ryan the authority to make termination decisions and because the undisputed facts demonstrate that Ms. Ryan was the final

decisionmaker in this case, Mr. Brooks's claims against FMS and Ms. Ryan in her official capacity correctly assert a right of action under the 1871 Civil Rights Act.   Defendants' Motion is therefore DENIED with respect to Ms. Ryan's liability in her official capacity.

## VI.   Punitive Damages

Defendants argue that Mr. Brooks is not entitled to punitive damages in this case.   In particular, Defendants assert that punitive damages for breach of contract are not available against municipal entities in New Mexico, Doc. 70, Def. MSJ, at 28 n. 10, and punitive damages are not available against Ms. Ryan because Mr. Brooks agrees that she expressed concern for him near the end of his employment.   Doc. 93, Reply ISO Def. MSJ, at 14.   Defendants further assert that Mr. Brooks cannot prove punitive damages under Section 1983 because Defendants did not act with malice or reckless and callous indifference in this case.   Doc. 70, Def. Memo ISO MSJ, at 27.   Defendants are correct that punitive damages cannot be assessed on these bases. Moreover, once Ms. Ryan is dismissed from Mr. Brooks's contract and quasi-contract claims, as set forth above, Mr. Brooks is left with no basis to pursue a punitive damages claim.

### A.   Punitive Damages under New Mexico Contract Law

Typically, punitive damages are unavailable in breach of contract suits.   RICHARD A. LORD, WILLISTON ON CONTRACTS § 65:2 (West, 4th ed. 2007) ("exemplary or punitive damages are not generally recoverable in breach of contract actions, even where the contract is maliciously or intentionally breached."); *see Smith v. Grand Canyon Expeditions Co.*, 84 P.3d 1154 (Utah 2003) (former employee was not entitled to punitive damages against employer in breach of contract action).   As explained in the Second Restatement of Contracts, "the central objective behind the system of contract remedies is compensatory, not punitive.   Punishment of a promisor for having broken his promise has no justification on either economic or other grounds

34

and a term providing such a penalty is unenforceable on grounds of public policy." RESTATEMENT (SECOND) OF CONTRACTS § 356 cmt. a (AM. LAW INST. 1979).

However, in New Mexico, punitive damages may be recoverable in breach-of-contract cases. *Craft v. Sunwest Bank of Albuquerque, N.A.*, 84 F. Supp. 2d 1226, 1238 (D.N.M. 1999) ("In New Mexico, punitive damages are recoverable . . . in contract cases"). While outside of New Mexico punitive damages claims in breach-of-contract cases are pursued under concurrently alleged causes of action arising in quasi-contract or tort (e.g. breaches of the covenant of good faith and fair dealing), in *Romero v. Mervyns*, the New Mexico Supreme Court determined that punitive damages awarded in breach of contract cases sounded in contract law and did not require additional causes of action. 109 N.M. 249, 257 (1989) (punitive damages in breach of contract suits may be "conceptualized . . . in terms of the quality of the conduct constituting the breach itself"). Under the New Mexico Uniform Jury Instructions, punitive damages may be awarded by a jury pursuant to a finding that the defendant acted recklessly, wantonly, oppressively, or fraudulently. N.M. UJI 13-861 (3rd ed. 1991). As a result, there is no general bar to punitive damages under Mr. Brooks's breach-of-contract claims.

Defendants assert that even if punitive damages are available generally for breach of contract in New Mexico, punitive damages are unavailable in this case because state law bars punitive damages awards against state entities. Doc. 70, Def. Memo ISO MSJ, at 28 n. 10; *Barreras v. State of New Mexico Corr. Dep't*, 133 N.M. 313, 317 (N.M. Ct. App. 2002) ("Punitive damages are not authorized [under the statute at issue], but in any event they would not be available in a breach-of-contract action against a state agency."). [7] In *Torrance County*

---

[7] Given that the issue was not briefed by the parties, the Court does not take up the question of whether a New Mexico municipal entity is more akin to a corporation than a state agency for the purpose of assessing damages under a breach of contract claim. *See* David J. Barron, *The Promise of Cooley's City: Traces of Local*

*Mental Health Program, Inc. v. New Mexico Health and Environment Department*, the New Mexico Supreme Court considered whether punitive damages were authorized against a state agency in a breach of employment contract case. 113 N.M. 593 (1992). There, the Court held that unless the punitive damages were explicitly authorized by statute, legislative silence should be interpreted as a failure to waive sovereign immunity regarding punitive damages, particularly in light of the fact that New Mexico taxpayers would be paying the bill. *Id.* at 597–601. The Court analogized to tort claims under the New Mexico Tort Claims Act, which also generally precludes awards of punitive damages. *Id.* at 597–98; *see Lopez, Sr. v. Las Cruces Police Dep't*, 139 N.M. 730, 735, *as corrected* (June 29, 2006) (interpreting the New Mexico Tort Claim Act as precluding punitive damages awards against government entities for causes of action arising in tort). Although it is questionable whether the New Mexico Supreme Court correctly interpreted the extent of New Mexico's waiver of her sovereign immunity, 113 N.M. at 597–601, this Court defers to that Court's interpretation of New Mexico state law, particularly where it is "intimately involved with a sovereign prerogative" such as sovereign immunity. *See Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 28 (1959); LARRY W. YACKLE, FEDERAL COURTS 513–15 (Carolina Academic Press, 3rd ed. 2009).

---

*Constitutionalism*, 147 U. PA. L. REV. 487, 487–93 (1999) (explaining that municipal governments are sometimes treated as private entities, sometimes as state entities, and sometimes as sovereign entities depending on the legal context); Gerald E. Frug, *The City As A Legal Concept*, 93 HARV. L. REV. 1059, 1099–1120 (1980) (comparing instances where municipalities are considered private entities to instances where municipalities are considered state entities); *cf. Lopez, Sr.*, 139 N.M. at 734–36 (holding that a municipal police department is a "government entity" for purposes of the New Mexico Tort Claims Act); *Monell*, 436 U.S. at 690–91 (holding that local government policy arises under the color of state law for the purpose of 42 U.S.C. § 1983).

Because the New Mexico Supreme Court has precluded punitive damages in contract actions against state entities absent express statutory authorization, Mr. Brooks cannot claim punitive damages in his contract or quasi-contract claims against FMS.

      B.  <u>Punitive Damages for Section 1983 Claims against Municipal Entities.</u>

To prove punitive damages under the 1871 Civil Rights Act, Mr. Brooks must prove that Defendants acted with either reckless indifference, callous disregard, or gross negligence, *Smith v. Wade*, 461 U.S. 30, 34–36 (1983), to the fact that Defendants may have been acting in violation of federal law. *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 535 (1999) ("[t]he terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law."); *see* NAHMOD at § 4:39. As the Tenth Circuit has articulated, *Smith v. Wade* authorizes "punitive damages in a 42 U.S.C. § 1983 lawsuit . . . for conduct that is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *BNSF R. Co. v. U.S. Dep't of Labor*, 816 F.3d 628, 642 (10th Cir. 2016) (quotations omitted). When determining punitive damages, "[t]he allowance of such damages inherently involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent. Therefore, the infliction of such damages, and the amount thereof . . . are of necessity within the discretion of the trier of the fact." *Lee v. S. Home Sites Corp.*, 429 F.2d 290, 294 (5th Cir. 1970). Furthermore, The Tenth Circuit has explicitly authorized punitive damages in procedural due process employment cases. *Miller v. City of Mission, Kan.*, 705 F.2d 368 (10th Cir. 1983); *Simineo v. School Dist. No. 16, Park Cnty, Wyoming*, 594 F.2d 1353 (10th Cir. 1979).[8]

---

[8] However, such damages awards are rare. NAHMOD at §4:53 ("Procedural due process violations do not always provide a basis for punitive damages awards, perhaps because many such violations turn out to be more technical than egregious.").

Here, there is conflicting evidence regarding whether FMS acted with reckless indifference to Mr. Brooks's constitutional rights.  Defendants point out that, in deposition, Mr. Brooks stated that it was "probably" Ms. Ryan's genuine belief that an exception to the SPA applied in his case; Defendants also point out that Ms. Ryan expressed concern for Mr. Brooks in her termination memorandum.  Doc. 70, Def. Memo ISO MSJ, at 13–14 ¶¶ 48–49.  Mr. Brooks counters that Ms. Ryan tried to change the terms of the contract by classifying him as a "classified administrator" or "district-wide manager" after deciding to terminate him, thus establishing that the violation of his contract was intentional.  Doc. 78, Pl. Opp. to Def. MSJ, at 8–9 ¶¶ 26–30.  Mr. Brooks further asserts that Ms. Ryan was aware at the time of the contract that another, similarly situated employee (Letitia Tagge) was entitled to due process rights.  Doc. 78, Pl. Opp. to Def. MSJ, at 3 ¶¶ 3–5.  Finally, Mr. Brooks has asserted that the term "district-wide manager" was first applied to Mr. Brooks after FMS had already decided to terminate him, in an apparent attempt to deprive Mr. Brooks of his rights.  Doc. 92, Pl. Reply ISO MSJ, at 6 ¶ 10.

Regardless of this conflicting evidence, Mr. Brooks is barred from seeking punitive damages in this case.  The Supreme Court has decided that punitive damages may not be awarded against municipalities under the 1871 Civil Rights Act.  *City of Newport v. Fact Concerts, Inc*., 453 U.S. 247, 265 (1981); CHEMERINSKY at § 8.5.3.  Applying *City of Newport*, the Tenth Circuit found in *Miller* that punitive damages could not be awarded against municipalities in procedural due process employment cases.  705 F.2d at 377–78.  As a result of *City of Newport* and *Miller*, Mr. Brooks's punitive damages claims cannot lie against FMS or Ms. Ryan in her official capacity under Section 1983.

Because punitive damages are not available against a municipality for Section 1983 claims, are not available against a New Mexico state entity for breach of contract claims, and Ms. Ryan must be dismissed from all claims except in her official capacity, which is duplicative of the Section 1983 claim against FMS, Mr. Brooks has no remaining punitive damages claims available.

Following the analysis set forth above, Defendants' Motion regarding Mr. Brooks's punitive damages claims is GRANTED.

## CONCLUSION

At this time, there is no way to determine – based on the undisputed facts – whether Mr. Brooks performed "primarily district wide management functions" that would provide an exception to the employment protections outlined in the SPA, FMS Policy, and his contracts.

Regarding the other questions of law submitted in the Cross Motions, the undisputed facts show that Ms. Ryan was not privy to the contracts at issue in this litigation and that Mr. Brooks was not provided with the protections from termination outlined in the SPA, FMS Policy, or his employment contracts.  Moreover, after the appropriate dismissal of Ms. Ryan from Mr. Brooks's contract and quasi-contract claims, as well as Mr. Brooks's Section 1983 claims in her individual capacity pursuant to this Court's previous Order and the decision issued by the Tenth Circuit in this case, Mr. Brooks is left with no basis for punitive damages.

**IT IS THEREFORE ORDERED** that Mr. Brooks's Motion for Partial Summary Judgment [Doc. 66] is GRANTED in PART and DENIED in PART and Defendants' Motion for Summary Judgment and For Qualified Immunity [Doc. 69] is GRANTED in PART and DENIED in PART.  Specifically, Mr. Brooks's motion is DENIED regarding all causes of action, but is granted regarding the specific facts that: (1) Mr. Brooks is not a "certified

administrator" under  N.M. Stat. Ann. § 22-10A-26 and (2) that Defendants did not follow the termination procedures outlined in the FMS Policy or Mr. Brooks's employment contract.  These facts will be considered ESTABLISHED under FED. R. CIV. P. 56(g).  Defendants' motion is GRANTED regarding the dismissal of Mr. Brooks's state law claims against Ms. Ryan, Ms. Ryan's qualified immunity from Mr. Brooks's constitutional claim in her individual capacity, and regarding Mr. Brooks's claims for punitive damages.  Defendant's motion is DENIED regarding Mr. Brooks's state law and constitutional claims because a genuine dispute of material fact remains as to whether Mr. Brooks performed "primarily district wide management functions" under N.M. Stat. Ann. § 22-10A-26.

DATED this  27th  day of June, 2016.

_____
MARTHA VÁZQUEZ
United States District Judge